IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CLAUDE CUMMINGS, III,            §
                                 §
                Plaintiff,       §
                                 §
v.                               §      CIVIL ACTION NO. H-10-1096
                                 §
TEXAS SOUTHERN UNIVERSITY,       §
                                 §
                Defendant.       §

## MEMORANDUM OPINION AND ORDER

Claude Cummings, III brings this action against Texas Southern University alleging that he was terminated in retaliation for complaining about Texas Southern University's noncompliance with title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.  Pending before the court is Defendant Texas Southern University's Motion for Summary Judgment and Brief in Support (Docket Entry No. 12).  For the reasons explained below, Texas Southern University's motion will be granted.

## I.  Factual and Procedural Background

### A.  Underlying Facts

In 2003 Texas Southern University ("TSU") hired Claude Cummings, III as head coach of the women's basketball team.[1]

---

[1]Deposition of Claude Cummings, III, Exhibit 1 to Plaintiff Claude Cummings, III's Response to Defendant Texas Southern University's Motion for Summary Judgment and Brief in Support of Denial of Said Motion ("Plaintiff's Response"), Docket Entry No. 13, p. 18:8-20.

Cummings' direct supervisor was TSU's then-Athletic Director Alois Blackwell.[2]   During Cummings' tenure as head coach, which spanned nearly five seasons, TSU's women's basketball program struggled to find success on the court.   As demonstrated below, with Cummings as coach the program failed to achieve a winning season and accumulated a total win-loss record of 23-87:

- 2003-2004 Season:   10 wins, 17 losses
- 2004-2005 Season:    5 wins, 23 losses
- 2005-2006 Season:    5 wins, 22 losses
- 2006-2007 Season:    5 wins, 22 losses
- 2007-2008 Season:    8 wins, 16 losses[3]

Between 2004 and 2007 Cummings was periodically told by then-Athletic Director Alois Blackwell that he needed to win more games.[4]

The women's basketball program's academic record was also subpar while Cummings was head coach.   For each of Cummings' five seasons his team's Academic Performance Rating ("APR") — an NCAA-compiled statistic that purports to measure student-athletes'

---

[2]Id. at 25:1-7.

[3]Affidavit of Johnnie Cole, Exhibit 5 to Defendant Texas Southern University's Motion for Summary Judgment and Brief in Support ("Defendant's Motion"), Docket Entry No. 12, ¶ 4; Deposition of Claude Cummings, III, Exhibit 1 to Defendant's Motion, Docket Entry No. 12, pp. 43:14-44:4.   For the 2007-2008 season, the team actually finished with 8 wins and 20 losses, but Cummings was terminated with four games remaining in the season. Id.

[4]Deposition of Claude Cummings, III, Exhibit 1 to Plaintiff's Response, Docket Entry No. 13, p. 27:1-19.

progress towards graduation[5] — fell below the NCAA Division I average.[6]

In 2007 and 2008 TSU made several significant changes in key leadership positions, particularly within the athletic department. Ronnie Courtney, the men's basketball coach, was terminated in mid-2007 at the end of his sixth season.[7] Coach Courtney had posted four losing seasons in a row, and his teams' APRs were below the Division I average from 2003 to 2007.[8] Similarly, Steve Wilson, the head football coach, was terminated in late 2007 after posting four straight losing seasons and a team APR that was consistently below the NCAA Division I average.[9]

In early 2008 John Rudley was appointed President of TSU.[10] Shortly after Rudley was appointed he removed Alois Blackwell as

---

[5]Affidavit of Johnnie Cole, Exhibit 5 to Defendant's Motion, Docket Entry No. 12, ¶ 3.

[6]See NCAA Division I Head Coach APR Portfolio for Claude Cummings, Exhibit 4B to Defendant's Motion, Docket Entry No. 12, p. 1.

[7]See Deposition of Claude Cummings, III, Exhibit 1 to Defendant's Motion, Docket Entry No. 12, pp. 40:5–41:3.

[8]See Texas Southern Men's Basketball Won/Loss History, Exhibit 3F to Defendant's Motion, Docket Entry No. 12, p. 1; NCAA Division I Head Coach APR Portfolio for Ronnie Courtney, Exhibit 4E to id., p. 1.

[9]See Deposition of Claude Cummings, III, Exhibit 1 to Defendant's Motion, Docket Entry No. 12, p. 39:2–24; Texas Southern Football Won/Loss History, Exhibit 3C to id., p. 1; NCAA Division I Head Coach APR Portfolio for Steve Wilson, Exhibit 4E to id., p. 1. Cummings was uncertain during his deposition of the exact timing of Wilson's termination. Deposition of Claude Cummings, III, Exhibit 1 to id., p. 39:2–24.

[10]See id. at 41:15–42:16.

Athletic Director and installed Johnnie Cole, the new football coach, as Interim Athletic Director.[11]  On February 27, 2008, Cole terminated Cummings as head coach of the women's basketball team because of Cummings' poor win-loss record, his teams' poor APR records and his players' failure to attend study hall, and Cole's desire to take the program in a different direction.[12]  In sum, within a span of twelve months TSU appointed a new president, replaced its athletic director, and terminated the head coaches of the football, men's basketball, and women's basketball teams.

Approximately one week before Cummings was terminated he met with Interim Athletic Director Cole to discuss what Cummings perceived to be inequities between the men's and women's athletic programs at TSU.[13]  Cummings complained that TSU had run afoul of the requirements of Title IX by (1) permitting the men's basketball team to hire more assistant coaches than the women's basketball team, (2) requiring Cummings, but not the coaches of the men's football and basketball teams, to teach classes to earn his full coaching salary, (3) not hiring either a Title IX Coordinator or a Senior Women's Administrator, and (4) providing the men's basketball team larger operating and recruiting budgets than the

---

[11]See id. at 39:21, 42:13-24.

[12]See id. at 51:14-55:1; Affidavit of Johnnie Cole, Exhibit 5 to Defendant's Motion, Docket Entry No. 12, ¶¶ 4-6, 9.

[13]Deposition of Claude Cummings, III, Exhibit 1 to Defendant's Motion, Docket Entry No. 12, pp. 51:14-53.

women's team.[14]  Cummings had lodged similar complaints from 2004 to 2007 with former Athletic Director Alois Blackwell and several other officials within the athletic department.[15]

## B.  Procedural History

Cummings filed this action in state court on February 26, 2010, and TSU removed the action on the basis of federal-question jurisdiction on April 5, 2010.[16]  Cummings alleges that TSU retaliated against him "for complaining about the inequalities of [TSU's] women's athletic program as compared to the men's program" in violation of "Title IX of the Education Amendments of 1972 and the implementing regulation at 34 C.F.R. Part 106 (2008)."[17]  TSU moved for summary judgment on January 28, 2011, on grounds that there is no evidence for a reasonable jury to conclude that Cummings' termination was in retaliation for Cummings' Title IX complaints.[18]  Cummings responds that there is a genuine issue of

---

[14]Cumming's Rebuttal to the Department of Education, Office of Civil Rights, Exhibit 2 to Defendant's Motion, Docket Entry No. 12, pp. 1-2.

[15]Deposition of Claude Cummings, III, Exhibit 1 to Plaintiff's Response, Docket Entry No. 13, pp. 26:21-25, 30:1-25.

[16]Defendant, Texas Southern University's Notice of Removal of Plaintiff's Civil Rights Action Brought Pursuant to Title IX of the Texas Education Amendments of 1972, 20 U.S.C. § 1681, and the Implementing Regulation at 34 C.F.R. Part 106 (2008) ("Notice of Removal"), Docket Entry No. 1, ¶¶ 1-2.

[17]Plaintiff, Claude Cummings III's, Original Petition ("Original Petition"), Document 2 to Notice of Removal, Docket Entry No. 1, ¶ 4.

[18]Defendant's Motion, Docket Entry No. 12, pp. 12-13.

material fact regarding TSU's retaliatory motive, evidenced by the short period of time between Cummings' meeting with Cole and Cummings' termination.[19]

## II.  <u>Analysis</u>

### A.  **Applicable Law**

#### 1.  <u>Summary-Judgment Standard</u>

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(a).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S. Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate

---

[19]Plaintiff's Response, Docket Entry No. 13, p. 2.  TSU argues that Cummings' response to its summary-judgment motion should be denied as untimely, but because there is no evidence of any prejudice to TSU resulting from the delay, the court will consider Cummings' response in ruling on TSU's motion.

the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting <u>Celotex</u>, 106 S. Ct. at 2553–54).   If the moving party meets this burden, Rule 56(c) requires the nonmovant to show that specific facts exist over which there is a genuine issue for trial.   <u>Id.</u> (citing <u>Celotex</u>, 106 S. Ct. at 2553–54).   A party asserting that a fact is genuinely disputed must support the assertion by either (1) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, admissions, and interrogatory answers or (2) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.   Fed. R. Civ. P. 56(c)(1)(A)–(B).   In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 120 S. Ct. 2097, 2110 (2000).

    2.   <u>Title IX of the Education Amendments of 1972</u>

    "Title IX prohibits sex discrimination by recipients of federal education funding." <u>Jackson v. Birmingham Bd. of Educ.</u>, 544 U.S. 167, 125 S. Ct. 1497, 1503 (2005); <u>see</u> 20 U.S.C. § 1681(a).[20]   The private right of action implied by Title IX

---

    [20]Specifically, the statute provides that "[n]o person in the United States shall, on the basis of sex, be excluded from
(continued...)

encompasses claims of retaliation "where the funding recipient retaliates against an individual because he has complained about sex discrimination." Jackson, 125 S. Ct. at 1502. Such retaliation "constitutes intentional 'discrimination' 'on the basis of sex' in violation of Title IX." Id. at 1504.

Courts generally look to Title VII as the appropriate analog for the legal standards in Title IX claims. See, e.g., Preston v. Virginia ex rel. New River Cmty. Coll., 31 F.3d 203, 206-07 (4th Cir. 1994) (applying Title VII's burden-shifting scheme to a Title IX retaliation claim); Murray v. New York Univ. Coll. of Dentistry, 57 F.3d 243, 248 (2d Cir. 1995) (same) (discrimination and retaliation claims); Johnson v. Baptist Med. Ctr., 97 F.3d 1070, 1072 (8th Cir. 1996) (same) (discrimination claim); Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000) (same); Lowrey v. Tex. A&M Univ. System, 11 F. Supp. 2d 895, 911 (S.D. Tex. 1998) (same) (retaliation claim).[21] Since Cummings bases his allegations on circumstantial and not direct evidence, the court will analyze Cummings' claim under the familiar burden-shifting framework established by McDonnell Douglas v. Green, 411 U.S. 792, 93 S. Ct. 1817, 1824-26 (1973). See Lowrey, 11 F. Supp. 2d at 911; Smith v.

_____

[20](...continued)
participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

[21]The Fifth Circuit has not addressed what legal standard courts should apply to Title IX retaliation claims.

Xerox Corp., 602 F.3d 320, 327 (5th Cir. 2010) (Title VII case) (explaining that the McDonnell-Douglas approach applies when the plaintiff's claim is based on circumstantial evidence).

Under the McDonnell-Douglas framework Cummings must first establish a prima facie case of discrimination.[22]   Reeves, 120 S. Ct. at 2106 (ADEA case); Lowrey, 11 F. Supp. 2d at 911.   If Cummings makes a prima facie showing, the burden of production then shifts to TSU to articulate a legitimate, non-retaliatory reason for its employment action.   Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484 (5th Cir. 2008) (Title VII retaliation case); Lowrey, 11 F. Supp. 2d at 911.   If TSU meets this burden, the inference of unlawful retaliation dissolves and Cummings must establish that TSU's reason is a pretext for the actual retaliatory reason.   Id. The ultimate burden of persuading the trier of fact that TSU intentionally discriminated against Cummings remains with Cummings. Reeves, 120 S. Ct. at 2106.

**B.   Analysis**

   1.   Cummings' Prima Facie Case

   To establish a prima facie case of retaliation Cummings must show that (1) he participated in an activity protected by Title IX, (2) TSU took an adverse employment action against him, and (3) a

---

   [22]The court, of course, will modify the McDonnell-Douglas framework so that it conforms to activities governed by Title IX rather than Title VII.

causal connection exists between the protected activity and the adverse action.  Lowrey, 11 F. Supp. 2d at 912; see Aryain, 534 F.3d at 484; Shirley v. Chrysler First, Inc., 940 F.2d 39, 42 (5th Cir. 1992).  Since the parties do not dispute that Cummings' complaint about TSU's alleged noncompliance with Title IX qualifies as a "protected activity" or that Cummings' termination was an "adverse employment action," the only issue is whether Cummings has established the requisite causal connection between the two.

Cummings argues that the causal connection is evidenced by Cole's knowledge of Cummings' Title IX complaints and the short period of time — approximately one week — that transpired between Cummings' complaint and his termination.[23]  "Although the third element of a prima facie case — causation — is similar to the ultimate issue in an unlawful retaliation claim, the standard for establishing a causal link at the prima facie case stage is much less stringent."  Martin v. Kroger Co., 65 F. Supp. 2d 516, 558 (S.D. Tex. 1999) (citing Long v. Eastfield Coll., 88 F.3d 300, 305 n.4 (5th Cir. 1996)).  Cummings does not have to prove that his Title IX complaint to Cole was the sole factor motivating TSU's termination decision in order to establish the requisite causal link.  See id. (citing Long, 88 F.3d at 304 n.4).  Furthermore, "[t]he timing of the adverse employment action can be a significant, although not necessarily determinative, factor" in

_____

[23]Plaintiff's Response, Docket Entry No. 13, pp. 2-3.

determining whether a causal connection exists.  Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1092 (5th Cir. 1995).

Because TSU does not argue that Cummings has failed to meet its prima facie burden, and in light of the low standard for establishing a causal connection, the court assumes without deciding that Cummings' evidence is sufficient to make a prima facie showing of retaliation.

2.  TSU's Legitimate and Non-Retaliatory
    Basis for Termination

TSU contends that the only reasons for Cummings' termination were his poor win-loss record, his players' subpar academic record, and Interim Athletic Director Cole's vision to take the program in a different direction.[24]  Cummings does not dispute that in nearly five seasons as head coach he failed to register a winning season and accumulated a combined win-loss record of 28-87.[25]  Nor does Cummings dispute that his teams' academic performance was below the Division I average for each of those seasons.[26]  The court concludes that TSU's proffered reasons for termination are legitimate and non-retaliatory.

---

[24]Defendant's Motion, Docket Entry No. 12, p. 10.

[25]Affidavit of Johnnie Cole, Exhibit 5 to Defendant's Motion, Docket Entry No. 12, ¶ 4; Deposition of Claude Cummings, III, Exhibit 1 to Defendant's Motion, Docket Entry No. 12, pp. 43:14-44:4, 53:7-54:3.

[26]Deposition of Claude Cummings, III, Exhibit 1 to Defendant's Motion, Docket Entry No. 12, pp. 53:1-54:10.

3.   Evidence of Pretext

Despite TSU's articulation of legitimate, non-retaliatory reasons for Cummings' termination, Cummings can survive summary judgment by showing that TSU's proffered reasons are a pretext for retaliation.  See Reeves, 120 S. Ct. at 2106.  Cummings can accomplish this either directly by showing that a retaliatory reason more likely motivated [TSU's] decision or indirectly by showing that [TSU's] "explanation is unworthy of credence."  See Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 1095 (1981) (Title VII case).

Cummings submits no evidence, direct or indirect, that could persuade a reasonable jury that his termination was in retaliation for his complaints about TSU's noncompliance with the requirements of Title IX instead of the poor on-the-court and academic records of his basketball teams.  Cummings does not contend that TSU's stated reason is unworthy of credence.  In fact, as mentioned above, Cummings agrees with Cole's assessment of his win-loss record and his teams' APR record.  The football and men's basketball coaches were terminated in the months leading up to Cummings' termination after posting similarly deficient win-loss and academic records.[27]  Moreover, based on his performance

_____

[27]See id. at 39:2-24, 40:5-41:3; Texas Southern Men's Basketball Won/Loss History, Exhibit 3F to Defendant's Motion, Docket Entry No. 12, p. 1; NCAA Division I Head Coach APR Portfolio for Ronnie Courtney, Exhibit 4E to id., p. 1; Texas Southern (continued...)

-12-

evaluations with the former Athletic Director, Cummings knew that TSU expected him to win more frequently.[28]

Other than Cummings' "unwavering . . . belief that he was summarily terminated because of his complain[ts] about the inequities in the programs," the only basis for Cummings' allegation is that he was terminated approximately one week after his meeting with Cole, during which he made the Title IX complaints.[29]  Temporal proximity standing alone, however, is insufficient to establish an issue of fact as to pretext after an employer has provided a non-retaliatory reason.  <u>Aryain</u>, 534 F.3d at 487 (citing <u>Strong v. Univ. Healthcare Sys., LLC</u>, 482 F.3d 802, 808 (5th Cir. 2007)).  Cummings offers no evidence that Cole was upset about Cummings' complaints, admonished Cummings for making such complaints, or otherwise indicated that the complaints triggered Cummings' termination.  To the contrary, during the meeting Cole agreed with Cummings that TSU was not in compliance with its Title IX obligations.[30]

A plaintiff cannot prove pretext simply by grounding his claim in a mere belief that an employer acted with a discriminatory or

_____

[27](...continued)
Football Won/Loss History, Exhibit 3C to <u>id.</u>, p. 1; NCAA Division I Head Coach APR Portfolio for Steve Wilson, Exhibit 4E to <u>id.</u>, p. 1.

[28]Deposition of Claude Cummings, III, Exhibit 1 to Plaintiff's Response, Docket Entry No. 13, p. 27:1-19.

[29]Plaintiff's Response, Docket Entry No. 13, pp. 2-3.

[30]Deposition of Claude Cummings, III, Exhibit 1 to Defendant's Motion, Docket Entry No. 12, p. 55:8-20.

retaliatory motive.  See Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005) (rejecting an argument that was based on plaintiff's speculation as to retaliatory motive); Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000) (refusing to rely upon a plaintiff's subjective belief as to discriminatory intent).  In order to withstand summary judgment, Cummings must offer evidence from which the jury may infer that retaliation, in whole or in part, motivated the adverse employment action. Roberson v. Alltel Information Services, 373 F.3d 647 (5th Cir. 2004) (Title VII case).

## C.   Conclusion

Because TSU has put forth a legitimate explanation for terminating Cummings, and because Cummings has not shown that this reason was pretextual, his retaliation claim fails as a matter of law.  See Aryain, 534 F.3d at 487.

## III.  Order

For the reasons explained above, Defendant Texas Southern University's Motion for Summary Judgment (Docket Entry No. 12) is GRANTED.

SIGNED at Houston, Texas, on this the 6th day of May, 2011.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-14-